UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MCCAFFREY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF RICHMOND, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-03568-WHO<br><br>**ORDER ON THE MOTION TO DISMISS AND THE MOTION TO STAY; RESCHEDULING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 7, 15 |

Plaintiff Jesse McCaffrey ("McCaffrey") filed this lawsuit pro se in Contra Costa County Superior Court against the City of Richmond and a number of State and local entities and individuals, alleging federal and state law causes of action stemming from the towing of his van, in which he was residing. Four of these defendants ("the City Defendants") removed the case from state court and now move to dismiss the complaint in full, or, in the alternative, to dismiss those claims that are alleged against them. McCaffrey has sufficiently pleaded his due process claim against the City Defendants. With the opportunity to amend, he may also be able to adequately plead his state law claims against the City Defendants. However, because he legally could not allege facts to plead his first and third causes of action, they are DISMISSED with prejudice.

McCaffrey's Motion to Stay is DENIED. Instead, he should contact the Court's Legal Help Desk to get support in pursuing his case. He has 60 days from the date of this Order's filing to file any third amended complaint. Should he fail to file any amended complaint, his case will go forward against the City Defendants only with respect to his second cause of action alleging due process violations.

**BACKGROUND**

### I.     Factual Background

Jesse McCaffrey is homeless and unsheltered, currently living in West Oakland. Motion to Stay ("MTS") [Dkt. No. 15] ¶¶ 10–11. These days, he and his 15-year-old dog sleep on a pad under a tarp. *Id.* He cannot venture too far from his camping area for more than twenty minutes, as he is greatly concerned about theft of his property and the health of his dog. *Id.* Up until April 10, 2024, he did not have as many concerns as he does today because, although he was still unhoused, he relied on the shelter and security provided by his 1991 Ford E-350 van ("the van"). Second Amended Complaint ("SAC"), Notice of Removal [Dkt. No. 1] Exh. H at 159–190. On that date, he alleges, defendants in this case unlawfully towed the van.

McCaffrey alleges that in November of 2020, he purchased the van after receiving his final unemployment benefits. SAC ¶ 28. On November 30, 2022, he submitted a valid smog certificate to the Department of Motor Vehicles ("DMV"), and in January 2023, paid $548.33 for his registration and title transfer fees. *Id.* He was not able to purchase insurance for the van, because his usual insurer, AAA, no longer offered insurance for the van as a "personal use vehicle," only for its use as a commercial vehicle. SAC ¶ 30. Although he tried to purchase insurance online through a different insurer, he was unable to do so and was informed that he would need to wait a year to reapply for insurance. *Id.* In the meantime, he parked the van on private property. *Id.* In February 2024, seeking an affordable automobile insurance policy, he submitted an application online three times in an effort to get an insurance policy for the van—he never received any follow-up communication from the insurer about a policy. SAC ¶ 31.

On February 3, 2024, McCaffrey reached out to the City of Richmond ("the City") to inquire whether the City had any "safe parking" programs so that he could safely park the van for prolonged periods of time. SAC ¶ 32; SAC Exh. F. The City never responded. SAC ¶ 32. He admits that on several occasions in 2024, he parked the van on a public, residential street, each time for less than 72 hours, in whatever street parking space was nearest to the private property's driveway where he typically parked. SAC ¶ 33. Otherwise, he alleges, the van was "kept on

private property and not driven." SAC ¶ 28. Each time he left the van unattended, he posted a notice on the driver's side window of the van, stating the following:

> All of the fees required by the DMV to register this vehicle have been paid and a valid smog certificate has been submitted.  This vehicle is operational and is only parked here on the street temporarily while a crew working on the house at 5626 Panama Ave requires full access to the driveway for less than 72 hours.  The registration not being completed is only due to unexpected issues with obtaining insurance.  Due to pursuit of a remedy for prior wrongdoing of a public entity, this vehicle's owner unfortunately lacks the ability to pay any amount of fine or fee.  Additionally, this vehicle currently serves as a temporary shelter for its owner, and therefore there is no need to tow, seize, or impound this vehicle. Thank you for your understanding.

SAC ¶ 35.

McCaffrey asserts that he had previously interacted with Richmond Parking Enforcement Officer Tiara Gonzales ("Gonzales"), because she posted 72-hour warnings on the van whenever he parked the van on the street. SAC ¶¶ 37–38. He contends that he always complied and moved the van whenever Gonzales posted a notice. SAC ¶ 39.

On April 10, 2024, after returning to where he had parked the van on the street, McCaffrey learned that the van had been towed and impounded because of his expired registration. SAC ¶ 41. He alleges that Gonzales contacted Wellsco, Inc. (d/b/a Certified Towing) ("Certified Towing") to tow the van, without a warrant to do so. He received no notice that his van would be impounded and alleges that there were no outstanding complaints about the van. SAC ¶ 94. That same day, he rode his bike to the Richmond Police Department ("RPD") police station, to inquire about the whereabouts of the van, ask for its release, and request a tow hearing pursuant to California Vehicle Code § 22852(b)(4). SAC ¶¶ 47, 88. Upon his arrival to the police department, he spoke with an employee at the front desk, who informed him that an officer would be available to speak with him within a few minutes. SAC ¶ 51. McCaffrey was under the impression that his conversation with the officer was a "tow hearing," but it was not. SAC ¶ 52, 65. The officer refused to release the van, explaining to him that he would need to show proof of current registration before the van could be released. SAC ¶ 52.

On May 6, 2024, McCaffrey was able to obtain an automobile insurance policy for the van,

which he hoped to use to finally make the van's registration current. SAC ¶ 57–58. However, upon arriving at the DMV, he learned that Certified Towing had initiated a lien on the van. SAC ¶¶ 55, 58. Because of the lien, the DMV informed him, McCaffrey could not complete registration for the van until the lien was rescinded or by court order.[1] SAC ¶ 58. While determining next steps, McCaffrey visited the van at the Certified Towing tow yard, and discovered that some of his personal belongings had been scattered throughout the van or removed from the van altogether. SAC ¶ 61.

McCaffrey requested an administrative record of the incident, which he received in June 2024. SAC ¶ 65. It was at this time that he learned that the discussion he had with the police officer on April 10, 2024, was not a tow hearing, and that no tow hearing had been held or scheduled, despite his request for one. *Id.*

McCaffrey alleges that the City's relationship with Certified Towing resulting in the impounding of the van on April 10, 2024, is reflective of their longstanding "policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances." SAC ¶ 74. As a part of this practice, the City is able to remove vehicles without warrants, and Certified Towing can "assert an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal of the seized vehicles," benefiting financially without receiving direct payment from the City. SAC ¶¶ 77–81. It is also part of the City's practice, McCaffrey alleges, that this relationship between the City and Certified Towing does not result in any (1) notice to or (2) hearing for any of those parties' adversely affected by the towing and impoundment of their vehicle.[2] SAC ¶ 84.

---

[1] After learning about the lien and receiving a notice from Certified Towing about its plans to take action to fully own the van, McCaffrey sent a "courtesy stop request" to the DMV and its director Steve Gordon ("Gordon"). After McCaffrey filed a separate lawsuit against Certified Towing and its owner, the DMV placed a hold on the vehicle's title. SAC ¶ 63. The van remains in the possession of Certified Towing, awaiting the outcome of these lawsuits. *Id.*

[2] McCaffrey asserts that he received no prior notice or after-the-fact notice that the van would be towed. The City disputes this: Norma Contreras, the Police Record and Property Manager at the City of Richmond Police Department asserts that the police report related to this matter included a form titled "Vehicle Report CHP 180" that informed McCaffrey of the impound. Contreras Decl. Notice of Removal at 135. She asserts that the "Impound 126 Mailer" including this document

**II. Procedural Background**

McCaffrey filed this lawsuit in state court on May 20, 2024. *See* Notice of Removal, Exh. A at 7. He named the City, RPD, Richmond City Manager Shasa Curl ("Curl") and Police Chief Bisa French ("French") in their individual and official capacities (together, "the City Defendants") as defendants. He also named Certified Towing, Certified Towing's owner Darrell Wells ("Wells"), DMV Director Gordon, and the DMV as defendants, along with 100 Doe defendants.[3]

McCaffrey filed an amended complaint on June 11, 2024.[4] *See* Notice of Removal Exh. B at 22. Defendants filed a demurrer to the first amended complaint, which the court sustained without leave to amend on December 2, 2024. McCaffrey did not oppose the demurrer or appear at the hearing. *See* Notice of Removal, Exh. E at 94–96. After learning about the outcome of the hearing, McCaffrey moved to reconsider the court's order. *See* Notice of Removal, Exh. F at 111–152. On February 24, 2025, the court reconsidered and granted McCaffrey's motion in part. *See* ("State Court Order") Notice of Removal, Exh. G at 155–56. As is relevant here, the court gave leave for McCaffrey "to add a claim for violation of due process against the City of Richmond and the Richmond Police Department," but "reaffirm[ed] the remainder of its ruling on the demurrer, including its ruling that the claims for negligent training and supervision and intentional infliction of emotional distress are sustained without leave to amend." *Id.* at 155. McCaffrey filed his SAC on March 24, 2025. The City Defendants removed the case on April 23, 2025.[5] *See* Dkt. No. 1.

---

was sent to McCaffrey's address of record on April 10, 2024. *Id.* McCaffrey denies that these documents were ever sent to him. SAC ¶¶ 93–104.

[3] McCaffrey additionally named an entity named I-Lien in his original complaint, but removed that party in subsequent amendments. *Compare* Complaint [Dkt. No. 1] at 7 *with* First Amended Complaint [Dkt. No. 1] at 22 *with* Second Amended Complaint [Dkt. No. 1] at 160.

[4] In his first amended complaint, McCaffrey alleged four causes of action: (1) Conversion, against Wells, Certified Towing, and Does 1-10; (2) Negligent training and supervision against the City and Does 11-30; (3) Preliminary injunction against Gordon, the DMV, and Does 31–40; and (4) Intentional infliction of emotional distress against Wells, Curl, French, the City, and Does 41–50. Notice of Removal, Exh. B at 30–36.

[5] According to the City Defendants, McCaffrey had not served the SAC to the remaining defendants. Notice of Removal ¶ 10. Because the other defendants had yet to be served, they did not need to join or consent to removal. *Id.* (citing 28 U.S.C. § 1446(b)(2)(A)). As of the date of this Order, the remaining defendants have yet to enter this case.

1    The SAC alleges ten causes of action:[6] (1) deprivation of property by unreasonable seizure
2 in violation of 42 U.S.C. § 1983; (2) deprivation of property without due process of law in
3 violation of 42 U.S.C. § 1983; (3) taking of property without just compensation in violation of 42
4 U.S.C. § 1983 against the City; (4) replevin against Certified Towing; (5) conversion against
5 Certified Towing; (6) tortious interference against Certified Towing; (7) negligent training and
6 supervision against Curl, French, RPD, and the City; (8) fraud or negligence per se against Does 1
7 and 2 and the City; (9) intentional infliction of emotional distress against Wells, Curl, French,
8 RPD, the City and Does 41–50; and (10) injunctive relief against Gordon, the DMV, Certified
9 Towing and Does 31–40.

On April 30, 2025, the City defendants moved to dismiss the case. Motion to Dismiss ("MTD") Dkt. No. 7. Instead of responding to the motion, McCaffrey moved for the appointment of counsel on May 14, 2025. Dkt. No. 13. I dismissed the motion without prejudice and ordered McCaffrey to respond to the motion or risk dismissal of the case for failure to prosecute. Order Denying Motion to Appoint Counsel Without Prejudice ("Prior Order") [Dkt. No. 14]. McCaffrey moved to stay the case and responded to the MTD. Motion to Stay ("MTS") [Dkt. No. 15]; Opposition to the Motion to Dismiss ("Oppo. MTD") [Dkt. No. 16]. Defendants replied in support of their MTD and opposed the MTS. Reply in Support of the MTD ("Repl. MTD") [Dkt. No. 17]; Opposition to the Motion to Stay ("Oppo. MTS") [Dkt. No. 18]. I held a hearing on both motions on June 18, 2025. McCaffrey failed to appear.

## LEGAL STANDARD

### I.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

---

[6] Unless otherwise noted, a cause of action is alleged against all defendants.

6

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

## II. Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike, however, "are generally disfavored by courts because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12–00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

## DISCUSSION

### I. State Court Decision

The City Defendants first ask that I strike the SAC pursuant to Federal Rule of Civil Procedure 12(f), because it exceeds the scope of leave given by the state court following its Order granting McCaffrey's Motion for Reconsideration in Part. MTD 3; *see also* State Court Order [Dkt. No. 1] at 155–156. In support of their argument, the City Defendants cite only to cases where courts strike claims that exceed the scope of permitted amendments as granted by *that* court. *See* MTD 3–4. Although the state court in this case did clearly "reaffirm[] . . . its ruling on the demurrer," including identifying specific claims and defendants as dismissed without leave to amend, it was the City Defendant's decision to remove this case to federal court. State Court

Order at 155; *see generally* Notice of Removal. It was their decision to bring the case before a different judge. I decline to grant the Motion to Dismiss on those grounds.[7]

### II. Sufficiency of the Pleadings

#### A. *Monell* Liability

City Defendants next argue that McCaffrey has failed to adequately plead *Monell* liability, and so Counts 1, 2, and 3 alleging violations of 42 U.S.C. § 1983 ("Section 1983") must be dismissed against the City. I disagree.

Section 1983 allows an individual to seek damages from a state official who, while acting "under color of any statute, ordinance, regulation, custom, or usage" violated a federal constitutional right. 42 U.S.C. § 1983. In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that "municipalities and other local government units [are] to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). To properly bring a Section 1983 claim against a municipality, here the City of Richmond, McCaffrey must allege that he "was injured pursuant to [1] an expressly adopted official policy, [2] a long-standing practice or custom, or [3] the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). A plaintiff need only allege facts about one of these categories to successfully plead a claim against a municipality.

Here, while I agree with the City Defendants that McCaffrey has not adequately pleaded that there is an "official policy" or a "decision of a final policymaker," I disagree that he has not pleaded that there is a "long-standing practice or custom" used by the City. *Id.*; MTD 6–7.

In the SAC, McCaffrey describes the "City's and Certified Towing's regular policies, customs and/or practices for the detention and disposal of seized vehicles" for several pages. SAC ¶¶ 74–87. He alleges that the City, working with Certified Towing as its "impound contractor," has a custom of seizing vehicles without notice, a warrant, or a person's consent.[8] *Id.* The City

---

[7] City Defendants also assert that because McCaffrey filed the SAC two days after the deadline allowed by the state court, that is sufficient grounds for me to strike the entire SAC. MTD 4. It is not.

[8] McCaffrey alleges that these "seized vehicles" are not subject to any valid exception to the

9

does not pay Certified Towing for their work, he contends, but, rather, Certified Towing benefits from its ability to "impress an *ex parte* possessory lien" on the vehicles that it can tow under the direction of the City. SAC ¶ 80. He also alleges that Certified Towing pays a portion of any money earned through this process back to the City. SAC ¶ 82. Further, he contends, it is the City's regular practice that it does not provide any tow hearing or any information about a tow hearing to any individual subject to the City's seizure of their vehicle—even when one is requested. SAC ¶ 84.

"Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up). Here, liberally construing the SAC, *see Erikson*, 551 U.S. at 94, McCaffrey alleges that when given a choice to provide notice and hearings to those individuals whose vehicle is subject to a tow, the City's "deliberate choice" is to consistently provide neither. This is, especially considering his pro se status, sufficient for McCaffrey to state a claim for *Monell* liability against the City.

### B. Factual Pleading

The City Defendants finally argue that McCaffrey does not allege sufficient facts in the SAC for Claims 1, 2, 3, 7, 8, or 9 to survive a 12(b)(6) motion to dismiss. Although I agree that McCaffrey does not, and cannot, allege facts to state a claim upon which relief can be granted for his first and third causes of action, I conclude that he has alleged a claim against the City Defendants for due process violations. And, as it remains unclear to me whether McCaffrey could adequately plead his state law causes of action against the City Defendants, I DISMISS those claims against the City Defendants with leave to amend.

---

warrant requirement. SAC ¶ 82.

### 1. Count One – Unreasonable Seizure in Violation of 42 U.S.C. § 1983

McCaffrey first asserts a 42 U.S.C. § 1983 claim that defendants' actions constituted a warrantless and unreasonable seizure in violation of his Fourth Amendment rights. SAC ¶¶ 108–118. Throughout his complaint, McCaffrey articulates aspects of the "community caretaking doctrine," which is widely understood to explain an exception to the Fourth Amendment's warrant requirement. The Ninth Circuit has clarified that "[i]n their 'community caretaking function,' police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.' Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).

McCaffrey alleges that public safety was not at issue, nor was the van hindering the efficient movement of traffic where it was parked on April 10, 2024. The City Defendants do not contest his assertion but emphasize that the reason for the van's impoundment was because of its expired vehicle registration. MTD 8 (citing Cal. Veh. Code § 22651(o)). California Vehicle Code § 22650(b) states:

> Any removal of a vehicle is a seizure under the Fourth amendment of the Constitution of the United States . . . and shall be reasonable and subject to the limits set forth in Fourth Amendment jurisprudence. A removal pursuant to an authority, including, but not limited to, as provided in Section 22651, that is based on community caretaking, is only reasonable if the removal is necessary to achieve the community caretaking need, such as ensuring the safe flow of traffic or protecting property from theft or vandalism.

(emphasis added).

Section 22651(o) reads, however, that: "If a vehicle is found or operated upon a highway, public land, or an offstreet parking facility . . . [w]ith a registration expiration date in excess of six months before the date it is found" an officer may remove the vehicle. Cal. Veh. Code § 22651(o)(A)(i). McCaffrey does not contest that his registration was more than six months out

of date, as a result of his challenges to acquire insurance for the van, or that the van was parked on public lands. SAC ¶¶ 35, 41. It is clear from California caselaw that "statutorily authorized warrantless tows of any illegally parked vehicles, *unregistered vehicles*, or vehicles presenting some other immediate need for a tow" are permissible, even if they do not come within the understanding of the 'community caretaking' exception based on public health or convenience due to the location of the vehicle. *Coalition on Homelessness v. City and Cnty. of San Francisco*, 93 Cal. App. 5th 928, 947 (2023) (emphasis added).[9]

For that reason, McCaffrey fails to state a claim under his first cause of action. It is DISMISSED. And because he cannot cure the defect given the uncontroverted evidence that the van was not registered, it is dismissed WITH PREJUDICE.

### 2. Count Two – Failure to Provide Due Process in Violation of 42 U.S.C. § 1983

McCaffrey's second cause of action alleges a violation of his due process rights because defendants provided no notice (either prior to or following the impoundment of the van) and no hearing, as is required by California Vehicle Code Section 22852. That section reads, in relevant part:

> (a) Whenever an authorized member of a public agency directs the storage of a vehicle, as permitted by this chapter . . . the agency or person directing the storage shall provide the vehicle's registered and legal owners of record, or their agents, with the opportunity for a poststorage hearing to determine the validity of the storage.
>
> (b) A notice of the storage shall be mailed or personally delivered to the registered and legal owners within 48 hours, excluding weekends and holidays, and shall include all of the following information:
>
>     (1) The name, address, and telephone number of the agency providing the notice.
>
>     (2) The location of the place of storage and description of the vehicle, which shall include, if available, the name or make, the manufacturer, the license plate number, and the mileage.

---

[9] It is unclear whether defendants argue that the van's impoundment was reasonable under the community caretaking doctrine. *See* MTD 8–9 (citing California Vehicle Codes that state that "driving an unregistered car poses a public safety hazard because the car may not have undergone necessary environmental and safety inspections" and that it is "illegal to operate an unregistered vehicle on a public roadway.").

12

       (3) The authority and purpose for the removal of the vehicle.

       (4) A statement that, in order to receive their poststorage hearing, the owners, or their agents, shall request the hearing in person, writing, or by telephone within 10 days of the date appearing on the notice.

(c) The poststorage hearing shall be conducted within 48 hours of the request, excluding weekends and holidays. The public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle.

(d) Failure of either the registered or legal owner, or his or her agent, to request or to attend a scheduled hearing shall satisfy the poststorage hearing requirement.

(e) The agency employing the person who directed the storage shall be responsible for the costs incurred for towing and storage if it is determined in the poststorage hearing that reasonable grounds for the storage are not established.

Cal. Veh. Code § 22852.

    The City Defendants state that the Ninth Circuit has held that there is no pre-notice requirement. *See* MTD 9–10 (citing *Scofield v. City of Hillsborough*, 862 F.2d 759, 763–764 (9th Cir. 1988)). But the statute requires that a notice be sent within 48 hours after "storage" of the vehicle to the "legal owner[]" of the impounded vehicle. McCaffrey asserts that, contrary to what Norma Contreras states in her declaration is the typical practice of the police department, he never received notice of the impoundment. SAC ¶¶ 93–104. City Defendants provide no evidence that notice was mailed to McCaffrey. And while City Defendants point to *Goichman v. Rheubban Motors, Inc.* for the proposition that because a same-day hearing is not required for due process, the problem here is allegedly that he *never* received the opportunity to attend a hearing despite his request for one.

    Given the sufficiency of his *Monell* pleading and the allegations described above, I conclude that McCaffrey has stated a claim that defendants violated his right to due process. I DENY the Motion as to McCaffrey's second cause of action.

13

### 3. Count Three – Takings Violation of 42 U.S.C. § 1983

McCaffrey's third cause of action is a violation of the Fifth Amendment's taking clause. The Fifth Amendment enumerates a number of constitutional rights, including that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V.

Although McCaffrey adequately alleges that defendants removed his "private property . . . without just compensation," he does not, and cannot, allege that his property was taken "for public use." This is because, as defendants argue, towing vehicles falls within the realm of a municipality's "police powers" pursuant to California Vehicle Code Section 22651(0). And, "property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause" of the Fifth Amendment." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008). I DISMISS Count Three of McCaffrey's SAC WITH PREJUDICE.

### 4. Counts Seven, Eight, and Nine

The City Defendants move to dismiss the three state law claims alleged against them. MTD 11–14. Each of these claims fails insofar as they are pleaded against the City and RPD for the same reason: McCaffrey does not provide a statutory basis for these claims against the City and RPD, and so he cannot bring a cause of action against them. *See Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986) ("Since the duty of a governmental agency can only be created by a statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified.").

As for the individual City Defendants (Curl and French for Count Seven and Nine,[10] Does 1 and 2 for Count Eight), he likewise fails to state a claim. I will briefly address why. To the extent that McCaffrey can cure the defects explained below, he has leave to amend them.

---

[10] McCaffrey additionally alleges Count Nine against the owner of Certified Towing, Wells. As I previously mentioned, Wells has not yet appeared in this case and so the conclusions included in this Order are not made in reference to him or the other defendants who have yet to appear.

14

### i. Count Seven – Negligent Training and Supervision

In Count Seven, McCaffrey broadly asserts that the named defendants failed to train and supervise (1) Officer Gonzales, who initiated the tow; (2) the employees at RPD who failed to provide him with appropriate due process; and (3) RPD officers generally insomuch as they lack appropriate training on the bounds of the community caretaking exception to the Fourth Amendment warrant requirement. SAC ¶¶ 160–163. McCaffrey's allegations against Curl and French only appear to be alleged against them in their official roles as agents of the City and RPD; in their official roles, Curl and French act as extensions of those public entities. But there is "no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices." *De Villers v. County of San Diego*, 156 Cal. App. 4th 238, 252 (2007); *Johnson v. Shasta County*, 83 F. Supp. 3d 918, 936–937 (E.D. Cal. 2015) (J. Mueller) (granting defendants' motion to dismiss plaintiffs' claim of negligent hiring, training, supervision, and retention against Sutter County, but denying defendants' motion to dismiss plaintiffs' remaining negligence claims and other claims under Ca. Gov. Code 815.2 for vicarious liability)[11].

Even if McCaffrey had alleged facts against Curl and French in their individual capacities, he still fails to assert a claim against them under his seventh cause of action. "An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006) (internal quotation marks and citations omitted). McCaffrey has not alleged either that (1) Curl or French hired or supervised any employee that harmed him or that either (2) "knew or should have known" about any risk or hazard presented by any of those employees.

---

[11] Relatedly, if McCaffrey seeks to assert a cause of action against either the City or RPD or the City Defendants in their official capacities for vicarious liability pursuant to Ca. Gov. Code § 815.2, he must allege a "special relationship" between the defendant(s) and himself. *See Black v. City of San Diego*, 2023 WL 2336894 at *13 (S.D. Cal. 2023) (collecting cases).

### ii. Count Eight – Fraud or Negligence Per Se

McCaffrey pleads his eighth cause of action for fraud "or" negligence per se against the City and two Doe defendants—the receptionist he spoke with upon his arrival at the RPD police station and the officer who he spoke with on April 10, 2024, about the tow of his van. SAC ¶ 170–172. Addressing only the Doe defendants, *see* Discussion Part II.B.4, McCaffrey has not adequately pleaded either fraud or negligence against them.

To state a claim for common law fraud,[12] a plaintiff must plead: "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011). Although McCaffrey alleges that his interactions with the Doe defendants on April 10, 2024 did not lead to the tow hearing he was owed, he does not adequately allege that those individuals knew they were misleading him or that they intended to deceive him. He does not, importantly, allege that either of the Doe defendants explicitly told him anything along the lines of "speaking with an officer about your towed van is a tow hearing pursuant to California Vehicle Code Section 22852." He does not plead a claim for fraud.

McCaffrey alternatively pleads this cause of action for "negligence per se." California does not recognize such a cause of action. *See People of California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1086–87 (S.D. Cal. 2008) ("As evidenced by case law and the California Evidence Code, negligence *per se* is merely an evidentiary doctrine and not an

---

[12] McCaffrey does not specify whether he pleads common law fraud or fraud under Federal Rule of Civil Procedure 9(b). "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Because McCaffrey has not pleaded this claim with particularity, if his intention is to plead this cause of action pursuant to the Federal Rules, he fails to do so.

16

independent cause of action."). If McCaffrey wishes to allege a claim for ordinary negligence against the Doe defendants, he must adequately plead facts alleging duty, breach, causation, and damages. *See Conroy v. Regents of University of California*, 45 Cal. 4th 1244, 1250 (2009).

### iii. Count Nine – Intentional Infliction of Emotional Distress

McCaffrey alleges that due to defendants' actions, he "has suffered and continues to suffer from extreme stress and mental trauma caused by the deprivation of the temporary shelter Plaintiff depended on for many of his basic daily needs and survival, and also due to physical harm caused by Plaintiff's unexpected and unsheltered direct exposure to the weather, elements, and urban environment." SAC ¶ 177. He again fails to adequately allege a claim against either Curl or French in their individual capacities.

To allege a cause of action for IIED, a plaintiff must allege: "(1) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1607 (2009). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1123 (1989) (citation omitted). And, the level of suffering must include "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (citation omitted).

McCaffrey has not alleged extreme and outrageous conduct for which any defendant could be liable—vicarious or otherwise. Although he alleges that Officer Gonzales was aware of his circumstances and his issues acquiring insurance for the van, as I have already explained, McCaffrey has not adequately alleged that Officer Gonzales' actions were outside the scope of the law. While he has alleged that several Doe defendants' actions resulted in the deprivation of his

17

due process rights, he has not alleged that those Doe defendants acted with "intent of causing, or reckless disregard of the probability of causing, emotional distress." Even if McCaffrey had alleged that Curl or French were responsible for the actions of Officer Gonzales, the Doe defendants, or Wells (who is also a named defendant in this cause of action), none of the conduct pleaded rises to the level of "extreme and outrageous" as is required.

### III. McCaffrey's Motion to Stay

Following my Prior Order denying McCaffrey's Motion to Appoint Counsel without prejudice, McCaffrey moved to stay the case. *See* Prior Order [Dkt. No. 14]; MTS. He explains that, given the difficult circumstances stemming from the fact that he is currently unhoused, much of his day-to-day scheduling is unpredictable. MTS ¶¶ 10–16. McCaffrey contends that these difficulties prevent him from being able to prosecute his case without an attorney and he explains that he would like to stay the case to learn more about the legal procedures and laws surrounding this case. MTS ¶¶ 5–9. He has no funds to procure legal counsel. MTS ¶ 2.

Because I conclude that McCaffrey has adequately pleaded his second cause of action and might be able to amend his complaint to cure the defects in his state law causes of action, his case may move forward. I recognize McCaffrey's difficult circumstances and that he would benefit from legal support to continue to prosecute his case. But his SAC was well-organized and well-written. I recommend that he seek free limited legal assistance from the Court's Legal Help Desk by calling the appointment line at (415) 782-8982 or emailing fedpro@sfbar.org. Appointments are available both in-person at the San Francisco and Oakland courthouses or remotely by Zoom or telephone. The Legal Help Desk provides the opportunity to speak with an attorney who will provide basic legal help, but not legal representation. In the very least, McCaffrey should present this Order along with other relevant documents filed so far in this case during his appointment with the Legal Help Desk to discuss next steps. For more information he may visit: cand.uscourts.gov/about/court-programs/legal-help-desks/. He should also continue to seek legal

representation on his own. I will consider his request for counsel again at the next hearing.

His Motion to Stay is DENIED. I will instead provide McCaffrey extended time (60 days from the date of this Order) to file any third amended complaint.

## CONCLUSION

The Motion to Dismiss is GRANTED in part and DENIED in part. McCaffrey's first and third causes of action are DISMISSED WITH PREJUDICE. His seventh, eighth, and ninth causes of action are DISMISSED with leave to amend. McCaffrey's second cause of action against the City Defendants survives. The Motion to Stay is DENIED. Any third amended complaint shall be filed no later than **August 22, 2025**.

The Case Management Conference previously set for July 28, 2025, is continued until **September 23, 2025, at 2:00 p.m**. The Joint Case Management Statement is due September 16, 2025.

**IT IS SO ORDERED.**

Dated: June 23, 2025

William H. Orrick
United States District Judge

19